# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EMERGE ENERGY SERVICES LP, et al.,[1] | ) | Case No. 19-11563 (KBO) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ------------------------------------------------- | | |
| STOUT EXCAVATING GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Case No. 19-____ (KBO) |
| v. | ) | |
| | ) | |
| SUPERIOR SILICA SANDS LLC and | ) | |
| HPS INVESTMENT PARTNERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Pursuant to 11 U.S.C. § 506(a) and Fed. R. Bankr. P. 3012 and 7001(2), the Plaintiff, Stout Excavating Group LLC ("Stout" or "Plaintiff") by and through its undersigned counsel, asserts as follows as its complaint against the Defendants, Superior Silica Sands LLC ("Superior" or "Debtor") and HPS Investment Partners, LLC ("HPS"):

## GENERAL STATEMENT

1. Stout is an excavating company who holds perfected statutory liens against property of Superior located in Texas. In this proceeding, Stout seeks determinations that it is a secured creditor whose liens are (i) valid, perfected, and unavoidable liens against the property in question and (ii) superior to the liens, if any, held by HPS and its principals against the same property such

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Emerge Energy Services LP (2937), Emerge Energy Services GP LLC (4683), Emerge Energy Services Operating LLC (2511), Superior Silica Sands LLC (9889), and Emerge Energy Services Finance Corporation (9875). The Debtors' address is: 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas 76109.

that Stout's liens constitute (x) "Senior Liens" or "Prior Permitted Liens" within the meaning of the final order approving DIP financing and the DIP financing agreement in this case and (y) "Other Secured Claims" within the meaning of the Debtors' proposed amended chapter 11 plan.

## JURISDICTION AND VENUE

2.  The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), including Superior Silica Sands, LLC ("Superior"), each filed for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 15, 2019 (the "Petition Date"). Each of the Debtors have continued to operate their respective businesses and manage their respective properties as debtors-in-possession in accordance with 11 U.S.C. §§ 1107(a) and 1108.

3.  This adversary proceeding has been filed pursuant to Fed. R. Bankr. P. 7001(2) and (9).

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and this is a core proceeding under 28 U.S.C. § 157(b)(2).

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

6.  Pursuant to Local Rule 7008-1, Stout consents to the entry of final orders or judgments in this proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES AND GENERAL BACKGROUND

7.  Stout is a Wisconsin limited liability company with its principal place of business in Bloomer, Wisconsin.

8.  Superior is a Texas limited liability company with its principal place of business at 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas, 76109.

9. HPS is a Delaware limited liability company whose principal place of business, upon information and belief, is located at 40 West 57th Street, 33rd Floor, New York, New York 10019. HPS serves as the agent for the PrePetition Lenders and the DIP Lenders (all as are identified below).

10. The Debtors, through the operations of Superior, engage in the mining, processing, and distribution of silica sand for use in hydraulic fracturing (or "fracking") of oil and gas wells. Superior has silica mining facilities in Wisconsin, Texas, and Oklahoma.

11. Stout is an excavation company. Stout contracted with Superior to provide excavating and mining services for Superior's mining facilities located in Bexar County, Texas (the "Bexar Facility").

12. Superior failed to pay Stout for work performed on the Bexar Facility.

13. Shortly before the Petition Date, Superior terminated Stout's services.

14. The work performed by Stout consisted of mineral activities such as the digging, drilling, operating, completing or maintaining of a mine or quarry.

15. Stout has filed a lien affidavit in Bexar County, Texas, asserting a statutory lien under Texas Property Code Chapter 56 to secure payment for labor or services related to mineral activities. A true and correct copy of the mining lien affidavit (the "Lien Affidavit") is attached as Exhibit A and incorporated by reference.

16. As reflected in the Lien Affidavit, the total amount owed to Stout for prepetition mineral activities is $3,274.933.93.

17. The Lien Affidavit reflects obligations which Superior has failed to pay, despite demand by Stout and repeated assurances by Superior.

18.     Superior breached its agreements with Stout by failing to pay for the services reflected in the Lien Affidavit.

## THE BANKRUPTCY FILING AND POSTURE OF THE CASE

19.     On the Petition Date, the Debtors filed a variety of first-day motions, including a Motion (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (III) Granting Related Relief [Doc. No. 20] (the "Financing Motion").

20.     In the Financing Motion, Superior and the other Debtors asserted that they were parties to certain first and second lien obligations with HPS Investment Partners LLC as administrative and collateral agent on behalf of the "First Lien Prepetition Lenders" and the "Second Lien Prepetition Noteholders."  Financing Motion, ¶ 5.

21.     In the Financing Motion, Superior and the other Debtors (except for Emerge Energy Services GP LLC and Emerge Energy Services Finance Corporation) asserted they owed the First Lien Prepetition Lenders "not less than $66,710,000, plus accrued and unpaid interest and fees with respect thereto." Id.

22.     In the Financing Motion, Superior and the other Debtors (except for Emerge Energy Services GP LLC and Emerge Energy Services Finance Corporation) asserted they owed the Second Lien Prepetition Noteholders "not less than $215,755,307, plus accrued and unpaid interest and fees with respect thereto." Id.

23. In the Financing Motion, Superior and the other Debtors asserted that the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders (collectively, the "Prepetition Lenders") were secured creditors holding liens on the "Prepetition Collateral" identified in the respective loan documents. Financing Motion, ¶ 6.

24. In the Financing Motion, the Debtors asserted that the Prepetition Collateral "comprises substantially all of the Debtors' assets." Financing Motion, ¶ 7.

25. In the Financing Motion, the Debtors sought approval of debtor-in-possession financing from the PrePetition Lenders who would, as to the post-petition loans, be identified as the DIP Lenders.

26. Jointly with other statutory lien claimants, Stout filed an objection to the Financing Motion. [Doc No. 134]. Stout asserted that its liens were superior to those of HPS on certain assets and reserved all rights associated with its assertion of "Senior Liens" or "Prior Permitted Liens" as those terms were defined in the DIP financing agreement and order.

27. The final order granting the Financing Motion and approving the DIP financing agreement (the "Final DIP Order") provided that HPS, on behalf of the DIP Lenders, would receive junior liens on any collateral that was subject to "valid, perfected and unavoidable liens senior to the Prepetition Liens in existence immediately prior to the Petition Date." Final DIP Order, ¶ 13(a)(iii).

28. The DIP Financing Agreement, as approved, recognizes the possible existence of "Prior Permitted Liens" which would include certain valid, perfected, and unavoidable liens in favor of third parties. See § 7.2 of the DIP financing agreement and definitions of "Permitted Encumbrances" and "Prior Permitted Liens."

29. Stout's objection to the Financing Motion specifically preserved and reserved all issues as to lien priority and the extent or validity of Stout's lien rights, as well as any valuation issues.

30. Under the Final DIP Order, the Debtors' stipulations as to the validity and priority of the liens of the PrePetition Lenders are not binding upon Stout for a period of 75 days after entry of the interim order approving DIP financing (the "Challenge Period") so as to permit certain "Challenges" to be lodged. These Challenges would include objections to the stipulated valuation of assets as well as issues of lien priority. Final DIP Order, ¶ 26.

31. Under the Final DIP Order, the Debtors' stipulations as to the validity and priority of Prepetition Liens in the Prepetition Collateral are subject to Challenge if brought within the Challenge Period; otherwise, the stipulations become binding on third parties, including Stout.

32. Stout's complaint in this case constitutes a Challenge within the meaning of the Final DIP Order and has been brought within the Challenge Period in timely fashion.

33. On September 11, 2019, the Debtors filed their First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code [Doc. No. 362] (the "Plan").

34. The Plan defines "Secured Claim" as a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code. Plan Art. I.C.

35. The Plan defines "Other Secured Claim" as "any Secured Claim other than an Administrative Claim, DIP Credit Agreement Claim, Secured Tax Claim, or Prepetition Debt Claim." Id.

36. The Plan, as currently proposed, classifies Other Secured Claim as "Class 2." Plan Art. III.B.2.

37. The Plan provides that each holder of an allowed class 2 claim shall receive, at the election of the Debtors or Reorganized Debtors:

> (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Class 2 Claim shall have agreed in writing; (C) the Collateral securing such Allowed Class 2 Claim; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

38. On September 11, 2019, the Debtors filed the solicitation version of the Disclosure Statement for First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code. [Doc No. 363] (the "Disclosure Statement"). In regard to the treatment of construction or mechanics' or materialmen's liens, the Disclosure Statement provides as follows:

> In some cases, vendors have asserted liens ("M&M Liens") to secure allegedly accrued and unpaid amounts owing under prepetition contracts with the Debtors. The Debtors are aware of the assertion of M&M Liens filed against various of the Debtors' properties at which the subject work and/or services were allegedly supplied. These properties include Debtor-owned property at Kingfisher, Oklahoma, Kosse, Texas, San Antonio, Texas, and Chippewa County, Wisconsin. The Debtors continue to examine the validity and perfection of such liens and their related claims, as well as the relative priority of any such valid and perfected liens relative to other valid and perfected liens on the affected properties. To the extent any valid and perfected M&M Liens enjoy a priority in respect of the affected property sufficient to render the related claims secured, those claims will be treated as Other Secured Claims under the Plan, while any deficiencies will be treated as General Unsecured Claims. The Debtors continue to reserve

7

all rights in respect of the asserted M&M Liens. Disclosure Statement, Article II.C.3.

39. While the Disclosure Statement further acknowledges that the Debtors are "not aware of the existence of any mortgage" in favor of the Prepetition Lenders against the property located in Kingfisher County Oklahoma, the Debtors do not acknowledge the priority or validity of Stout's mining lien as to the Bexar Facility.

**COUNT I:**
**DETERMINATION OF THE VALIDITY, PRIORITY, AND EXTENT**
**OF STOUT'S LIEN ON MINING PROPERTY**

40. Stout asserts and realleges the allegations of paragraphs 1-39 above.

41. As of the Petition Date, there were three deeds of trust (the "Deeds of Trust") recorded against the Bexar Facility in favor of the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders.

42. Stout commenced work on the Bexar Facility after the Deeds of Trust were recorded in the real property records of Bexar County.

43. Under Texas Property Code § 56.003, the following property is subject to Stout's mining lien: (i) the material, machinery, and supplies furnished or hauled by the lien claimant; (ii) the land for which the labor was performed or material, machinery, or supplies was furnished or hauled, together with the buildings and appurtenances on the property; and (iii) other material, machinery, and supplies used for mineral activities (the "Mining Property") owned by the owner of the mine real property.

44. Under Texas Property Code § 56.004(b), the lien on Mining Property takes priority over an earlier encumbrance on the land on which the Mining Property is placed or located.

45. Under Texas law, Stout's statutory mining lien on the Mining Property therefore takes precedence over earlier encumbrances on the real estate.

46. Under Texas law, Stout's statutory mining lien against Mining Property is superior to any interest of HPS or the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders, as those terms are defined in the Final DIP Order.

47. Stout's statutory mining lien against the Mining Property is a "Senior Lien" for purposes of the Final DIP Order.

48. Any interest of HPS or the DIP Lenders in the Mining Property created as a result of the Final DIP Order is junior to Stout's lien.

49. Under 11 U.S.C. § 506(a), Stout holds a secured claim to the extent "of the value of such creditor's interest in the estate's interest in such property."

50. Under 11 U.S.C. § 506(a), such value "shall be determined in light of the purpose of the valuation and the proposed disposition of the use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

51. According to the Debtors' Disclosure Statement and Plan, Superior intends to retain the Bexar Facility.

52. Based upon information and belief, Superior seeks to find that for purposes of the Plan, Stout's Allowed Class 2 Claim in relation to the Mining Property is substantially less than the outstanding balance of Stout's claim.

53. The Debtors' proposed valuation of these assets, and correspondingly of Stout's secured claim, is inconsistent with the proposed disposition and use of the property securing the claim.

54. Given the foregoing, there is an actual controversy between Stout and the Defendants as to the validity, priority, and extent of Stout's lien against the Mining Property.

55. A judicial determination of the validity, extent, and priority of Stout's lien on these assets is necessary to the proper administration of these estates.

## COUNT II:
## DECLARATORY JUDGMENT

56. Stout asserts and realleges paragraphs 1-55 above.

57. Stout's statutory mining lien constitutes a valid, perfected, and unavoidable prepetition lien upon the Bexar Facility.

58. Stout's statutory mining is a "Senior Lien" within the meaning of the Final DIP Order as to the Bexar Facility.

59. Any liens granted to HPS or the DIP Lenders pursuant to the Final DIP Order are junior to Stout's statutory mining lien.

60. A judicial determination and declaration of the respective rights of the parties is essential to the proper administration of these estates.

61. A judicial determination and declaration of the priority, validity, and extent of Stout's lien, together with a determination of the value of Stout's interest in the interest of the Debtors in the collateral securing its claim, is required to determine the appropriate treatment of Stout's Allowed Class 2 Claim for purposes of the Plan.

WHEREFORE, Stout requests entry of judgment against the Defendants as follows:

A. Declaring that (i) Stout's lien on the Mining Property is a valid, perfected, and unavoidable prepetition lien; and (ii) Stout's lien against the Mining Property is a "Senior Lien" within the meaning of the Final DIP Order and any lien of the DIP Lenders is junior and subordinate to that lien;

B. Determining the extent of Stout's lien in the Mining Property in accordance with 11 U.S.C. § 506(a);

C. Awarding Stout pre- and post-judgment interest, attorneys' fees and expenses incurred in connection with this adversary proceeding, any contested matter before this Court, and any other proceeding relating to these matters; and

D. Awarding such other and further relief as the Court deems equitable and proper.

Date: October 25, 2019　　　　　　　　　**SULLIVAN · HAZELTINE · ALLINSON** LLC
　　　　Wilmington, DE

　　　　　　　　　　　　　　　　　　　　　*/s/ E.E. Allinson III*
　　　　　　　　　　　　　　　　　　　　Elihu E. Allinson III (No. 3476)
　　　　　　　　　　　　　　　　　　　　901 North Market Street, Suite 1300
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Tel: (302) 428-8191
　　　　　　　　　　　　　　　　　　　　Fax: (302) 428-8195
　　　　　　　　　　　　　　　　　　　　Email: zallinson@sha-llc.com

　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　William E. Wallo, Esq.
　　　　　　　　　　　　　　　　　　　　**Weld Riley, S.C.**
　　　　　　　　　　　　　　　　　　　　3624 Oakwood Hills Parkway
　　　　　　　　　　　　　　　　　　　　Eau Claire WI 54701
　　　　　　　　　　　　　　　　　　　　Tel: (715) 839-7786
　　　　　　　　　　　　　　　　　　　　Fax: (715) 839.8609
　　　　　　　　　　　　　　　　　　　　Email: wwallo@weldriley.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Stout Excavating Group, LLC*